**LITE DEPALMA GREENBERG, LLC**
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

**FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk (109234)
Mark L. Knutson (131770)
William R. Restis (246823)
501 West Broadway, Suite 1250
San Diego, CA 92101
Tel: (619) 238-1333
Fax: (619) 238-5425
jrk@classactionlaw.com
mlk@classactionlaw.com
wrr@classactionlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SANJAY SAINI, Individually And On Behalf Of All Other Similarly Situated Residents,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) **VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT;**<br><br>(2) **BREACH OF CONTRACT;**<br><br>(3) **UNJUST ENRICHMENT;**<br><br>**DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201** |

Plaintiff Sanjay Saini ("Plaintiff") alleges as to himself based on his own experience, and as to all other allegations, based upon the investigation of counsel, which included, *inter alia*, a review of complaints, reports, advisories, press releases, and media reports about defendant BMW of North America, LLC ("BMW" or "Defendant").

336529.1

**INTRODUCTION**

1. Plaintiff brings this class action to remedy BMW's corporate policy of improperly selling demonstration vehicles ("demos") as new, which results in Plaintiff and Class members being cheated out of valuable warranty coverage for their BMW automobiles.

2. BMW is famous for providing its customers an express warranty called "BMW Ultimate Service" with four years of no cost maintenance and repair (the "Ultimate Warranty"). According to BMW, this means that consumers pay for "nothing but gas and tires." However, BMW also has a corporate policy that requires its dealerships to purchase thousands of demo vehicles to bolster BMW sales numbers. The result is that dealer floors are flooded with demo cars that BMW directs its dealerships to sell as new without disclosure of this fact to consumers.

3. BMW's corporate policy of selling demo vehicles as new causes Plaintiff and the putative Class herein direct pecuniary loss and cost. This is because BMW's Ultimate Warranty begins to accrue on the date of sale to a *consumer* for new cars, but on the date of sale to a *dealer* for demo cars. When demo vehicles are sold as "new" to unsuspecting consumers, they necessarily come with less than four years of the Ultimate Warranty coverage promised by BMW. This systematic failure to disclose vehicle "demo" status, and the consequential loss of valuable Ultimate Warranty coverage, constitutes an "unconscionable commercial practice" and is a "knowing, concealment … of [a] material fact" in violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-2), breaches BMW's contractual covenant to provide 4 years of Ultimate Warranty coverage for all new BMW vehicles, unjustly enriches BMW at the expense of Plaintiff and Class members, and entitles Plaintiff and the Class to a declaration of their rights under the federal Declaratory Judgments Act (28 U.S.C. § 2201).[1]

4. Plaintiff, on behalf of a nationwide Class, accordingly seeks relief in the form of restitution of the value of Ultimate Warranty coverage to which Class members are entitled,

---

[1] The Class pled herein is defined as "All consumers within the United States, who at any time after September 28, 2006, purchased a BMW demonstration vehicle that was identified in the contract of sale as "new." *See,* ¶ 21, *infra.*

2

disgorgement of BMW's wrongfully obtained revenue, compensatory damages for out of pocket expenses that should have been covered by the Ultimate Warranty, treble damages, declaratory relief affirming that BMW demo vehicles sold as "new" have a full 4 years of Ultimate Warranty, as well as injunctive or other equitable relief prohibiting BMW from proceeding with the improper and deceptive business practices as described herein.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Jersey has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. The Plaintiff, and many other members of the Plaintiff Class, are citizens of states different than that of Defendant's and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and cost.

7. In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in Woodcliff Lake, New Jersey, and because Defendant transacts business in this District, is subject to personal jurisdiction in this District, and many of the transactions alleged herein occurred in this District.

## THE PARTIES

8. Plaintiff Sanjay Saini is a citizen of the State of Virginia, residing at 2131Tannin Place, Apt 409, Vienna VA, 22182. Plaintiff bought a 2011 BMW 335d from Defendant's dealership, BMW of Sterling, in Sterling, Virginia. Plaintiff Saini's purchase order identified the 2011 BMW 335d as a "new" vehicle, as directed by Defendant. At the time of purchase, Plaintiff assumed his purportedly "new" BMW vehicle would come with the promised four years of Ultimate Warranty coverage.

9. Subsequent to Plaintiff's purchase of his 2011 BMW 335d, Plaintiff took his vehicle to an authorized BMW dealer for service and was informed by Defendant's dealer that the vehicle had less than the promised term of Ultimate Warranty coverage.

3

10. Defendant BMW of North America, LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Woodcliff Lake, New Jersey. BMW designs, manufactures, distributes, markets, services, repairs, sells, and leases BMW vehicles in all 50 states in the United States.

## SUBSTANTIVE ALLEGATIONS

11. Demo vehicles are vehicles sold to and operated by a motor vehicle dealership solely for the purpose of promoting motor vehicle sales and permitting potential purchasers to drive the vehicle for pre-purchase or pre-lease evaluation. These vehicles can be used for test drives, floor models, or be held in the dealership's inventory for later use. As such, a demo's mileage and condition vary depending on the role in which it was used. A vehicle with *de minimis* miles on the odometer could be a demo, making it impossible for a consumer to identify a demo vehicle in the normal course unless affirmatively disclosed by BMW. As an automotive news website warned, "next time you're at the BMW lot, look closely at that test drive model … It might be the same one you take home later."[2]

12. BMW has created incentives for dealers to sell demo vehicles as new vehicles by selling them to dealerships at a discounted price. For example, Autoblog.com reports that "[i]n July [2012] BMW offered a one-day, last-day-of-the-month sale price to dealers to buy demo vehicles at discounts of up to $7,000. Those units were booked as sales by the manufacturer, but dealers aren't really using the vehicles as demos, they're putting them on the lots as new cars."[3] This practice is encouraged by defendant BMW.

13. Defendant BMW has a corporate policy of directing its dealerships to sell demo cars as new. For example, a Wall Street Journal article states that "managers who own or oversee more than a dozen BMW dealerships said they routinely offer the [demo] vehicles as new and

---

[2] http://www.thecarconnection.com/news/1078534_bmw-may-have-fudged-sales-stats-to-remain-1-luxury-brand

[3] http://www.autoblog.com/2012/08/15/how-bmw-gamed-its-dealership-system-to-sell-more-cars/

336529.1

that BMW's U.S. sales unit approves of the practice."[4] This policy was conceived, directed, executed and monitored from BMW's sales headquarters in Woodcliff Lake, New Jersey, and violates the Federal Trade Commission's Used Car Rule (16 C.F.R. part 455), which requires car companies to disclose that a vehicle is a "demo."

14. Every new vehicle sold by BMW is covered by BMW's Ultimate Warranty, through Defendant BMW as the warrantor. BMW actively markets the Ultimate Warranty from its corporate headquarters in New Jersey.

15. The BMW Ultimate Warranty covers "maintenance costs … for 4 years or 50,000 miles, whichever comes first. This alone, can save you up to $2,000 in maintenance costs compared to other luxury vehicles."[5] The BMW Ultimate Warranty differentiates itself from competitors by including:

- The BMW Maintenance Program, which covers factory-recommended maintenance and service;
- The Unlimited-Mileage Roadside Assistance Program, which provides owners emergency roadside service during the Ultimate Warranty period;
- The New Vehicle Limited Warranty providing limited coverage for defects in materials and workmanship during the Ultimate Warranty period.

16. BMW's Ultimate Warranty for all BMW vehicles sold during the Class Period contain identical language pertaining to the warranty commencement date: "Coverage begins <u>on the date of first retail sale</u> or <u>the date the vehicle is first placed into service as a sales demonstrator</u>, Aftersales Mobility Program (AMP) Vehicle or company vehicle, <u>whichever is earlier</u>." (emphasis added).

---

[4] http://online.wsj.com/article/SB10000872396390444042704577589511359646688.html

[5] http://www.bmwusa.com/Standard/Content/Owner/BMWUltimateService/Default.aspx?from=/Standard/Content/Owner/BMWUltimateService.aspx&return=/Standard/Content/Owner/BMWUltimateService.aspx

336529.1

17. When Plaintiff and Class members buy demo vehicles disguised as new, the warranty period has been reduced by the time the BMW was on the dealer's lot. Plaintiff and Class members are thereby duped into buying cars expressly represented as "new," but that have less than the promised 4 years of Ultimate Warranty coverage.

18. This loss of Ultimate Warranty coverage results from Defendant's uniform policy of non-disclosure, which caused and continues to cause Plaintiff and the Class to purchase BMWs having a value less than a new car with 4 years of Ultimate Warranty coverage. Plaintiff and the Class are thus denied a material benefit of the bargain, the full term of BMW's valuable and costly Ultimate Warranty.

19. BMWs are notoriously expensive to maintain and repair. The truncated BMW Ultimate Warranty causes Class members to improperly incur costly regular maintenance and service costs, as well as repair and roadside service costs that would otherwise be the responsibility of BMW under the Ultimate Warranty, resulting from BMW's concealment that Class members' cars were sold to dealerships as demo vehicles.

20. Internet bulletin boards and chat rooms are replete with complaints about BMW not honoring the full term of Ultimate Warranty coverage for undisclosed demo vehicles sold as new.

## CLASS ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3) for the following Class of persons:

> All consumers within the United States, who at any time after September 28, 2006, purchased a BMW demonstration vehicle that was identified in the contract of sale as "new."

(the "Class"). Excluded from the Class are all governmental entities, Defendant herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

336529.1

22. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and will be ascertained through appropriate discovery, Plaintiff is informed and believes that there are tens of thousands of members in the proposed Class. As Plaintiff and members of the Class provide BMW dealerships with, at the least, their name and address at the time of purchase, members of the Class can be identified from records maintained by Defendant or its agents.

23. Each Class member paid for a new BMW vehicle, a portion of which is attributable to the value of BMW's Ultimate Warranty, which can be prorated as to each Class member to determine Class-wide restitution and/or damages.

24. Plaintiff's claims are typical of the claims of the other members of the Class. All members of the Class have been and/or continue to be similarly affected by Defendant's wrongful conduct as complained of herein. Plaintiff has no interests adverse to the Class.

25. Plaintiff will fairly and adequately protect the Class members' interests and has retained counsel competent and experienced in consumer class action lawsuits and complex litigation.

26. Defendant has acted with respect to the Class in a manner generally applicable to each Class member. Common questions of law and fact exist as to all Class members and predominate over any questions wholly affecting individual Class members. There is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Class members. Among the questions of law and fact common to the Class are, *inter alia*:

(a) Whether all or certain models of BMW vehicles sold during the Class Period come with Defendant's Ultimate Warranty standard;

(b) Whether Defendant's Ultimate Warranty for all or certain models of BMW vehicles sold during the Class Period commences at the date of retail sale for new vehicles, but at the date of sale to a dealer for demo vehicles;

336529.1

(c)     Whether Defendant BMW has a corporate policy or established procedure whereby its dealerships sell demo vehicles as new;

(d)     Whether Defendant's sale of demo vehicles as new constitutes an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" or otherwise violates the New Jersey Consumer Fraud Act;

(e)     Whether Defendant BMW's sale of demo vehicles as new is misleading to an average consumer, and is capable of, and likely to, mislead an average consumer;

(f)     Whether Defendant BMW has intentionally or negligently caused BMW demo vehicles to be sold as new;

(g)     Whether selling Plaintiff and the Class demo vehicles expressly identified as new in sales contracts, but failing and refusing to honor the four years of Ultimate Warranty coverage, violates BMW's contractual covenant that "Coverage begins on the date of first retail sale."

(h)     Whether Defendant BMW has been unjustly enriched by its wrongful conduct as alleged herein;

(i)     The nature and extent of damages, equitable remedies, and injunctive relief available to Plaintiff and members of the putative Class;

(j)     Whether Plaintiff and the members of the Class should be awarded attorneys' fees and the costs of suit.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in managing this action as a class action.

336529.1

28. Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## FIRST COUNT

### Violation of the New Jersey Consumer Fraud Act

29. Plaintiff repeats and realleges each of the foregoing allegations as if expressly set forth herein.

30. The advertisement, promotion, distribution, supply, sale, and lease of BMW vehicles is a "sale or advertisement" of "merchandise" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1.

31. Defendant's corporate policy of selling BMW demo vehicles as new constitutes an "unconscionable commercial practice" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, as such conduct is unfair and unjust and materially departs from standards of good faith, honesty in fact, and fair dealing in the public marketplace. Defendant's policy is factually dishonest and lacks fair dealing.

32. The status of a BMW vehicle as a "demo," which has less Ultimate Warranty coverage than a new BMW vehicle, is a material fact that Defendant was obligated to disclose to consumers.

33. Defendant's corporate policy of selling BMW demo vehicles as new operates as a "deception, fraud, false pretense, false promise [or] misrepresentation" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, as such conduct is misleading to the average consumer and is capable of, and likely to, mislead an average consumer.

34. Defendant's corporate policy of selling BMW demo vehicles as new constitutes a "knowing concealment, suppression or omission of any material fact" under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2. BMW was and is aware that its concealment, omission, and misrepresentation of the status of demo vehicles will cause Plaintiff and the Class to

unknowingly purchase demo vehicles with less than four years of Ultimate Warranty coverage, and intended this result.

35. Plaintiff and the Class suffered ascertainable loss in the form of diminished value of a BMW vehicle resulting from a truncated Ultimate Warranty period. Plaintiff and Class members did not receive the benefit of their bargain because they were sold a BMW vehicle represented to be new, but which had less Ultimate Warranty coverage than a new vehicle.

36. The ascertainable losses of Plaintiff and the Class are a direct and proximate result of Defendant BMW's corporate policy to conceal, omit, and misrepresent the status of demo vehicles as new.

## SECOND COUNT

### Breach of Contract

37. Plaintiff repeats and realleges each of the foregoing allegations as if expressly set forth herein.

38. Between Defendant BMW and each member of the Class, there exists a legally enforceable, valid written contract for BMW's performance of the Ultimate Warranty, which states verbatim or in language with equivalent, unambiguous connotation, capable of common proof, that "Coverage begins on the date of first retail sale or the date the vehicle is first placed into service as a sales demonstrator, Aftersales Mobility Program (AMP) Vehicle or company vehicle, whichever is earlier."

39. The term of the contract between Plaintiff and the Class and defendant BMW requires Defendant to provide Plaintiff and the Class with four years of Ultimate Warranty coverage on all new cars.

40. The term and coverage of BMW's Ultimate Warranty became a benefit of the bargain in Plaintiff and the Class' purchase of BMW vehicles that were expressly described as "new".

41. Plaintiff and each member of the putative Class performed all covenants and conditions precedent to Defendant honoring the terms of the Ultimate Warranty, including

336529.1

paying or agreeing to pay the purchase price of a BMW automobile, and taking their BMW vehicles to authorized BMW dealers in the United States.

42. Plaintiff relied upon Defendant's representation in his purchase agreement that the vehicle he was purchasing was "new," at the time of purchase, and the language of BMW's Ultimate Warranty that commencement of the Ultimate Warranty's four year period began on the date of the first retail sale.

43. Plaintiff and each member of the Class are in contractual privity with defendant BMW, as it is the promisor under the Ultimate Warranty.

44. Plaintiff and the Class' BMW vehicles do not conform to Defendant's representations that their BMW's vehicles are "new" with an attendant four year Ultimate Warranty Period, because Defendant systematically fails and refuses to honor the Ultimate Warranty for demo vehicles sold as new.

45. Defendant BMW breached its contract with Plaintiff and each member of the Class by systemically failing and refusing to honor the full four year term of Ultimate Warranty for BMW demo vehicles sold as new.

46. Defendant's breach of its contractual covenant to provide four years of Ultimate Warranty coverage for all BMW vehicles sold as new is a material breach of contract.

47. As a direct and proximate result of Defendant's breach of contract, Plaintiff and each member of the Class has experienced loss, cost, damage and expense, in an amount to be proved at trial.

### THIRD COUNT
### Unjust Enrichment

48. Plaintiff repeats and realleges each of the foregoing allegations as if expressly set forth herein.

49. Plaintiff and each member of the putative Class paid or agreed to pay the purchase price of a BMW automobile, thus conferring a material financial benefit on defendant BMW, at the expense of Plaintiff and the Class

50. Defendant's corporate policy of selling BMW demo vehicles as new destroyed and / or injured Plaintiff and the Class' right to receive four years of Ultimate Warranty coverage for BMW vehicles expressly represented to be "new" vehicles.

51. Defendant BMW was unjustly enriched by unilaterally and improperly relieving itself of the obligation to perform maintenance, repair and services pursuant to the Ultimate Warranty that Defendant otherwise would have been required to incur had Defendant honored the full term of Ultimate Warranty coverage for BMW vehicles sold as new.

52. Defendant's corporate policy of selling BMW demo vehicles as new was without any legitimate purpose, instead for the purpose of improperly boosting BMW sales and/or revenue.

53. Permitting Defendant BMW to escape its obligations under the Ultimate Warranty is unjust and inequitable, as Plaintiff and the Class have paid valuable consideration to BMW for their Ultimate Warranty coverage.

## FOURTH COUNT

**Declaratory Relief Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201**

54. Plaintiff repeats and realleges each of the foregoing allegations as if expressly set forth herein.

55. Defendant BMW has and continues to deny Ultimate Warranty coverage for BMW vehicles sold as "new" in Plaintiff and the Class' contract of sale.

56. Plaintiff and the Class are entitled to have this Court establish by declaration their rights and legal relations under BMW's Ultimate Warranty for demo cars that were sold by Defendant as new.

**DEMAND FOR JURY TRIAL**

57.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

A.     For an order declaring that this action is properly maintained as a class action and certifying Plaintiff as a class representative in accordance with Rule 23 of the Federal Rules of Civil Procedure;

B.     For an order awarding Plaintiff and the members of the Class damages, restitution and/or disgorgement and/or trebling of damages, other equitable relief as the Court deems proper, including but not limited to the imposition of a constructive trust upon Defendant's profits resulting from the unlawful business acts and practices described herein;

C.     For declaratory relief affirming that BMW demo vehicles sold as "new" have a full 4 years of Ultimate Warranty

D.     For an order enjoining Defendant from selling demo cars as new, and/or continuing to engage in the wrongful conduct as alleged herein;

E.     For an order awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest;

F.     For an order awarding attorneys' fees and costs of suit, including experts' witness fees as permitted by law; and

G. Such other and further relief as this Court may deem just and proper.

Dated: September 28, 2012  LITE DEPALMA GREENBERG, LLC

By: /*s/ Bruce D. Greenberg*
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

**FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk (109234)
Mark L. Knutson (131770)
William R. Restis (246823)
501 West Broadway, Suite 1250
San Diego, CA 92101
Tel: (619) 238-1333
Fax: (619) 238-5425
jrk@classactionlaw.com
mlk@classactionlaw.com
wrr@classactionlaw.com

*Attorneys for Plaintiff*

14

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiff, by his attorneys, hereby certifies that the matter in controversy is not related to any other action.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  September 28, 2012                     **LITE DEPALMA GREENBERG LLC**

/*s/ Bruce D. Greenberg*
Bruce D. Greenberg
Two Gateway Center, Suite 1201
Newark, New Jersey 07102
Tel: (973) 623-3000
Fax: (973) 623-0858
bgreenberg@litedepalma.com

**FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk (109234)
Mark L. Knutson (131770)
William R. Restis (246823)
501 West Broadway, Suite 1250
San Diego, CA 92101
Tel: (619) 238-1333
Fax: (619) 238-5425
jrk@classactionlaw.com
mlk@classactionlaw.com
wrr@classactionlaw.com

*Attorneys for Plaintiff*

336529.1