NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SANJAY SAINI, Individually And On Behalf of All Other Similarly Situated Residents,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No.: 12-6105 (CCC)<br><br><br><br><br>OPINION |

**CECCHI**, District Judge.

This matter comes before the Court upon the Motion of Plaintiff Sanjay Saini ("Plaintiff") for Final Approval of a Class Action Settlement Agreement [ECF No. 28] and Plaintiff's Motion for Attorneys' Fees and Costs [ECF No. 29]. Defendant BMW of North America, LLC ("Defendant") does not oppose either motion.  The Court conducted a fairness hearing on March 12, 2015.  Having considered the arguments by all the parties to this matter, the Court sets forth its findings below.[1]

---

[1] The Court considers any arguments not presented by the parties to be waived.  See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

## I.   BACKGROUND

### A.   Litigation History

This action commenced on September 28, 2012 when Plaintiff filed a class action complaint alleging Defendant violated the New Jersey Consumer Fraud Act as well as other state contract law claims.  Plaintiff alleged that Defendant maintained a corporate policy of failing to provide warranty coverage for demonstration vehicles sold by BMW dealers as "new," thereby depriving Class Members of valuable warranty coverage.  Plaintiff sought money damages, injunctive relief barring Defendant from selling demonstration vehicles as "new," and attorneys' fees and costs. (Compl., ECF No. 1).

On October 6, 2014, the Court issued an order conditionally certifying a settlement class of initial purchasers of BMW Sales Demonstration ("sales demo") vehicles or BMW Aftersales Mobility Program ("service demo") vehicles, approved the form and manner of notice proposed by the parties, appointed settlement class counsel, and appointed Plaintiff Saini as settlement class representative [ECF No. 26].  On February 3, 2015, the Plaintiff submitted a Motion for Final Approval of the Settlement Agreement [ECF No. 28] and a Motion for Attorneys' Fees [ECF No. 29]. Both motions are unopposed.

### B.   Settlement Agreement

#### 1.   Terms

The Settlement Class consists of over 104,000 initial purchasers of BMW sales demo or service demo vehicles within the United States between September 28, 2006 and October 6, 2014 where (1) the vehicles were identified as "new" in the sales contract and (2) the purchasers were not informed that the vehicle was a sales or service demo vehicle whose warranty had commenced prior to the date the customer purchased the Class Vehicle.  As part of its obligations under the

2

Settlement Agreement, BMW NA will extend the length of its warranty at least an additional three months and will reimburse original purchasers of Class Vehicles whose warranty already expired for repair costs that would otherwise have been covered by BMW NA's new vehicles warranty. The reimbursement will cover repairs that occurred within three months of the warranty's expiration.  In exchange for payment of this sum, Defendant will receive a waiver and release of all claims that were or could have been asserted based on the alleged facts in the complaint.  A Class Member must demonstrate through appropriate proof that (1) he or she was the original purchaser of a BMW vehicle, (2) the purchase was made on or after September 28, 2006, (3) the vehicle was identified in the contract of sale as "new," and (4) the purchaser was not informed that the vehicle was a sales or service demo vehicle whose warranty had previously commenced.[2]

### 2.    Notice Plan

Kurtzman Carson Consultants ("KCC") was responsible for administering the settlement notice plan.  On November 25, 2014, BMW NA provided KCC with a list containing the names and address of 198,872 potential Class Members (the "Class List").  (See Declaration of Phil Cooper ("Cooper Decl.") at ¶ 7).  After removing duplicates and accounting for supplemental records provided by BMW NA, the Class List contained names and addresses of approximately 104,702 individuals.  Id. at ¶ 11.  KCC electronically sent Claims Forms to over 99,600 unique e-mail addresses and mailed nearly 5,000 Claims Forms through the United States Postal Service

---

[2] To receive extended warranty coverage, a Class Member must also provide adequate proof that his or her vehicle is within 51 month/55,000 miles for sale demos or 48 months/50,000 miles for service demos as of the date the Claim Form is submitted.  Additionally, to receive reimbursement of past expenses, a Class Member must demonstrate that he or she incurred out-of-pocket expenses for repair costs that would otherwise have been covered by BMW NA's new vehicle warranty within 54 months/55,000 miles for sales demos or 51 months/50,000 miles for service demos.

via first class mail. Id. at ¶ 8-10.

KCC developed and administered a settlement website, which became operational on December 5, 2014 and is still available to Class Members to download and print a Claim Form to submit by mail. Id. at ¶ 13. KCC also established a toll-free phone line for Class Members to call with questions or to request mailed copies of the Notice and Claim Form. Id. at ¶ 15. As of January 29, 2015, the website has received 7,211 visitors and KCC has logged 354 calls to the toll-free line. Id. at ¶ 14-16.

### 3.     Attorney Fees, Expenses, and Incentive Awards

Plaintiff requests an Order directing BMW NA to pay $600,000 to Class Counsel for the payment of attorneys' fees and reimbursement of expenses as part of the Settlement Agreement. (Pl.'s Br. in Supp. at 1, ECF No. 29-1). This payment, if ordered by the Court, would be paid directly by BMW NA and would not affect the compensation received by any Class Member. Id. Defendant does not oppose this motion.

## II.     CLASS CERTIFICATION

Rule 23 of the Federal Rules of Civil Procedure requires the Court to engage in a two-step analysis to determine whether to certify a class action for settlement purposes. First, the Court must determine if Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Rule 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the requirements of Rule 23(b) are met. See Fed. R. Civ. P. 23(a) advisory committee's note. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). Rule

23(a) provides that Class Members may maintain a class action as representatives of a class if they show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### A.    Rule 23(a) Factors

#### 1.    Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." Cannon v. Cherry Hill Toyota, Inc., 184 F.R.D. 540, 543 (D.N.J. 1999) (citation omitted). "[G]enerally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (citation omitted).

Numerosity is easily satisfied here because there were over 104,000 potential class members and KCC mailed or emailed Claim Forms to all of them. (Cooper Decl. at ¶ 8-10).

### B.    Commonality

Plaintiffs must demonstrate that there are questions of fact or law common to the class to satisfy the commonality requirement. Fed. R. Civ. P. 23(a)(2). The Supreme Court recently clarified the standard, emphasizing that a plaintiff must show that Class Members "have suffered the same injury," not merely a violation of the same law. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

5

Furthermore, the Court noted that commonality is satisfied where common questions "generate common <u>answers</u> apt to drive the resolution of the litigation." <u>Id.</u> at 2551 (citation omitted) (emphasis in original); <u>see</u> <u>also</u> <u>Sullivan v. DB Invs., Inc.</u>, 667 F.3d 273, 299 (3d Cir. 2011). The claims of Class Members "must depend upon a common contention . . . . [which] must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Wal-Mart</u>, 131 S. Ct. at 2551. Still, "commonality does not require an identity of claims or facts among Class Members[;]" rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted).

Several common question of law and fact exist in this case, including whether BMW NA had a policy of directing BMW dealers not to disclose a vehicle's demo status, thereby shortening the term of warranty coverage available to Plaintiff and Class Members. This alleged conduct gives rise to whether BMW NA breached its promise to provide four (4) years of Ultimate Warranty coverage for all "new" BMW vehicles or unjustly enriches BMW NA. These questions of law and fact are common to all Class Members, and therefore commonality is satisfied.

### C.    Typicality

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical of the claims . . . of the class. The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." <u>Barnes v. Am. Tobacco Co.</u>, 161 F.3d 127, 141 (3d Cir. 1998) (citation omitted). As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, stating that

6

"[i]f the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established . . . ." Newton, 259 F.3d at 183–84; see also Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994). The typicality requirement "does not mandate that all putative class members share identical claims." 259 F.3d at 184 (citation omitted); see also Hassine v. Jeffes, 846 F.2d 169, 176–77 (3d Cir. 1988).

Here, the claims made by named Plaintiff Saini and those made on behalf of the other Class Members arise out of the same alleged conduct by Defendant—namely, BMW NA's alleged policy of failing to provide four years of Ultimate Warranty coverage per its contractual covenant for demonstration vehicles sold by BMW dealers as "new." Consequently, the named Plaintiff's claims are typical of those brought by the Class Members at large. See, e.g., In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 342 (3d Cir. 2010) (affirming the District Court's certification of the settlement class where "the claims of the class representatives [were] aligned with those of the Class Members since the claims of the representatives ar[o]se out of the same conduct and core facts"); Grasty v. Amalgamated Clothing & Textile Workers Union, 828 F.2d 123, 130 (3d Cir. 1987) (holding that the District Court did not abuse its discretion in finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stem from a single course of conduct"). Thus, typicality is also satisfied.

### D.   Adequacy of Representation

Finally, the Court must consider adequacy of representation both as to the named Plaintiff and the Class Counsel under Rules 23(a) and (g). The class representatives should "fairly and adequately protect the interests of the class." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 630 (3d Cir. 1996). Such class representatives must not have interests antagonistic to those of the class. Id. In order to find "antagonism between [the named] plaintiff[s'] objectives and the objectives of

7

the [class]," there would need to be a "legally cognizable conflict of interest" between the two groups. Jordan v. Commonwealth Fin. Sys., Inc., 237 F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to defeat a class action "unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 482 (W.D. Pa. 1999) (quoting In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996)).

Here, there is no indication that Plaintiff Saini's interests are antagonistic to those of the class. Plaintiff Saini purchased one of the Class Vehicles subject to the Settlement Agreement and was allegedly injured in the same manner based on BMW NA's purported policy. (Pl.'s Br. in Supp. at 16). Thus, it appears Plaintiff Saini has ample incentive to represent the class. Consequently, the adequacy requirement has been met.

Class Counsel and their respective law firms have extensive experience litigating complex class actions and obtaining class action settlements. (See Declaration of Bruce Greenberg ("Greenberg Decl.")). Thus, the Court finds that Class Counsel has the qualifications, experience, and ability to conduct the litigation.

With this last requirement satisfied, it is clear that the Settlement Class in this case has demonstrated compliance with the elements of Rules 23(a) and (g).

**E.     Rule 23(b)(3) Factors**

The Court must next address the question of whether the class comports with the requirements of Rule 23(b). Under 23(b)(3), the Court must find both that "the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As explained below, the class action in

8

this case readily meets these requirements of predominance and superiority.

### 1.   Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise;" instead, they must provide evidence that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997); see also Sullivan v. DB Invs., Inc., 667 F.3d 273, 297 (3d Cir. 2011) (noting that the predominance requirement is "more stringent" than the Rule 23(a) commonality requirement). The Third Circuit has repeatedly held that predominance exists where proof of liability depends on the conduct of the defendant. See Sullivan, 667 F.3d at 298–301 (reaffirming the Third Circuit precedent supporting this holding). "[V]ariations in state law do not necessarily defeat predominance[] and . . . concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." Id. at 297.

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members including whether BMW NA had a policy of treating Class Vehicles as demos for the purpose of warranty calculation even though they were sold by BMW dealers as "new." This question is subject to "generalized proof," and is "common to all class members." See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig., No. 3:08-MD-1998, MDL No. 1998, 2009 U.S. Dist. LEXIS 119870, at *26 (W.D. Ky. Dec. 22, 2009) ("the proof required [must focus] on Defendant's conduct, not on the conduct of individual class members."). Evidence in the record supports the conclusion that common questions predominate over individual questions particular to any putative Class Member. Consequently, the predominance requirement is satisfied.

## 2.   A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., Inc., 83 F.3d 610, 632 (3d Cir. 1996) (citing Katz v. Carte Blanche Corp., 496 F.2d 747, 757 (3d Cir. 1974) (en banc)). One consideration is the economic burden Class Members would bear in bringing suits on a case-by-case basis. Class actions have been held to be especially appropriate where "it would be economically infeasible for [individual Class Members] to proceed individually." Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 289 (D.N.J. 1997). Another consideration is judicial economy. In a situation where individual cases would each "require[] weeks or months" to litigate, would result in "needless duplication of effort" by all parties and the Court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." In re Corrugated Container Antitrust Litig., 80 F.R.D. 244, 252–53 (S.D. Tex. 1978); see also Klay v. Humana, Inc., 382 F.3d 1241, 1270 (11th Cir. 2004) (finding a class action to be the superior method because it would be costly and inefficient to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Sollenbarger v. Mountain States Tel. & Tel. Co., 121 F.R.D. 417, 436 (D.N.M. 1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, "[t]he efficacy of resolving all plaintiffs' claims in a single proceeding is beyond discussion").

To litigate the individual claims of even a fraction of the potential Class Members would place a heavy burden on the judicial system and require unnecessary duplication of effort by all

parties.  It would not be economically feasible for the Class Members to seek individual redress. The litigation of all claims in one action is far more desirable than numerous, separate actions and therefore the superiority requirement is met.

## III.   FAIRNESS OF THE CLASS ACTION SETTLEMENT

Under Federal Rule of Civil Procedure 23(e), approval of a class settlement is warranted only if the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Acting as a fiduciary responsible for protecting the rights of absent Class Members, the Court is required to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." In re Cendant Corp. Litig., 264 F.3d 201, 231 (3d Cir. 2001) (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)).  This determination rests within the sound discretion of the Court.  Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975). In Girsh, the Third Circuit identified nine factors to be utilized in the approval determination.  Id. at 157.  These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability ; (5) the risks of establishing damages ; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Id. (internal quotation marks, alterations, and citation omitted).

Additionally, a presumption of fairness exists where a settlement was the product of arm's-length negotiations, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objectors.  In re Warfarin Sodium Antitrust Litig., 391 F.3d

516, 535 (3d Cir. 2004). Finally, settlement of litigation is especially favored by courts in the class action setting. "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." In re Gen. Motors, 55 F.3d at 784; see also In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535 (explaining that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Turning to each of the Girsh factors, the Court finds as follows:

## A.      Complexity, Expense, and Likely Duration of the Litigation

The first factor, the complexity, expense, and likely duration of the litigation, is considered to evaluate "the probable costs, in both time and money, of continued litigation." In re Cendant Corp., 264 F.3d at 233 (quoting In re Gen. Motors, 55 F.3d at 812).

The instant litigation was commenced in 2012 and the duration of this action would only be further delayed absent approval of the settlement. Indeed, significant time, effort, and expense would be incurred to resolve discovery disputes, brief complex dispositive motions and a motion to certify the class, prepare for and complete trial, submit post-trial submissions, and pursue likely appeals. By reaching a settlement, the parties have avoided the significant expenses connected with these steps. Lastly, the settlement provides immediate and substantial benefits for the settlement class, including full warranty coverage three (3) months beyond what Class Members would have received had they bought a "new" vehicle that had not been previously used as a sales or service demo.

As a result, this factor weighs in favor of approval of the Settlement. See In re Warfarin Sodium Antitrust Litig., 391 F.3d at 535–36 (finding that the first Girsh factor weighed in favor of settlement because "continuing litigation through trial would have required additional discovery,

12

extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial").

**B.      Reaction of the Class to the Settlement**

This second factor "attempts to gauge whether members of the class support the settlement." In re Lucent Techs., Inc., Sec. Litig., 307 F. Supp. 2d 633, 643 (D.N.J. 2004) (internal quotation marks and citation omitted).  The Third Circuit has found that "[t]he vast disparity between the number of potential Class Members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement." In re Cendant Corp., 264 F.3d at 235.

In December 2014 notice was sent directly to more than 104,000 potential Class Members. As of March 5, 2015, only thirteen members elected to exercise their opt-out rights. (ECF No. 33, 33-1).  In addition, only one written objection to the Settlement was received, filed by Mr. Royce De Rohan Barondes. (ECF No. 31).   These numbers amount to miniscule fractions of the Settlement Class.  See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("such a low level of objection is a 'rare phenomenon'") (citation omitted).  The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the Settlement Class generally and overwhelmingly approves of the Settlement.  See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding "extremely low" level of exclusion and objection requests indicative of class approval of the settlement).

### 1. Sole Objection to the Adequacy of Relief Does Not Show the Settlement Is Unfair, Unreasonable, or Inadequate

Mr. Barondes objects to the settlement because (1) class notice was allegedly "not delivered on a timely basis," (2) he received "inadequate information" in response to his email

request to the Administrator, (3) the settlement is unfavorable because it forecloses on potential punitive or multiple damages, and (4) the settlement is ambiguous with regard to whether Class Members are releasing claims against individual BMW dealerships. (ECF No. 31, at ¶ 1-4). With respect to the timeliness of the notice Mr. Barondes received, the record indicates KCC caused noticed to be sent to Mr. Barondes on January 6, 2015 via first class mail. (See Cooper Decl., ¶¶ 4-5). The deadline for Class Members to respond to the notice was February 3, 2015, which was the date Mr. Barondes filed his objection with this Court. Thus, it appears Mr. Barondes received notice and timely filed his objection. Even if notice to Mr. Barondes was untimely, it would not necessarily constitute grounds for denying final approval. "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." Serio v. Wachovia Sec., LLC, 06-4681, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) ("Class counsel acted reasonably in implementing the notice regime, as detailed in the affidavit of the Claims Administrator attached to Plaintiffs' motion …. Whether or not Mr. Ryan received actual notice is not dispositive of this issue."). Because the parties utilized an individual notice program comprising e-mail, postal mail, and personalized skip tracing, due process and Rule 23 have been satisfied.

Next, Mr. Barondes objects on the grounds that he received inadequate information in response to his email request to the Administrator. (ECF No. 31, ¶ 2). In that request, Mr. Barondes asked for copies of the pleadings and certain document "evidence." Id. However, Class Members are not entitled to copies of all court documents and discovery. See Gold Strike Stamp Co. v. Christensen, 436 F.2d 791, 799 (10th Cir. 1970) (Rule 23 does not require Class Notice to include "all the various causes of actions, theories of recovery and defenses alleged in the complaints and

14

answers"); <u>Robertson v. Nat'l Basketball Ass'n</u>, 72 F.R.D. 64, 70-71 (S.D.N.Y. 1976) ("There is no requirement that every objector be allowed to have discovery concerning the settlement itself so that he can personally assure its reasonableness."), <u>aff'd</u>, 556 F.2d 682 (2d Cir. 1977). Here, the notice sent to Mr. Barondes and all Class Members accurately described the claims and defenses in the Action, and directed Class Members to the Court's docket if they wished to review the pleadings in more detail. Due process and Rule 23 do not entitle to Mr. Barondes to anything more.

Mr. Barondes claims the additional information he requests is relevant to his assessment of the availability of punitive damages and, therefore, his evaluation of the Settlement. (ECF No. 31, ¶ 3). However, the mere possibility of punitive or multiple damages is not an appropriate measure of the Settlement's reasonableness. <u>See</u> <u>In re Am. Family Enters.</u>, 256 B.R. 377, 425 (D.N.J. 2000) ("However, single damages, not treble or punitive damages, are the appropriate yardstick by which the fairness of a proposed class action settlement should be measured."). Here, the Settlement entitles Class Members to full warranty coverage plus an additional three months, as well as 100% reimbursement for out-of-pocket expenses that would have otherwise been covered by warranty. (<u>See</u> ECF No. 28-1, at 23, 28-29). In essence, Class Members are made "whole" plus three additional months of warranty coverage with none of the delay, risk, and uncertainty of continued litigation. The "appropriate yardstick"—single damages—confirms this Settlement should be approved.

Lastly, Mr. Barondes argues that the Settlement is ambiguous with regard to whether Class Members are releasing claims against BMW dealerships. (ECF No. 31, ¶ 4). However, the Court notes that the long-form Notice posted on the Settlement website expressly states that "the claims released by Class Members are all claims that could arise out of BMW NA's and/or BMW Center's

15

sale of Sales Demonstration and/or Aftersales Mobility Program vehicles as 'new.'" Thus, it appears that the Settlement release is clear and unambiguous with respect to BMW dealerships. In sum, the lone objection raised by Mr. Barondes is without merit and does not alter the Court's finding that the Settlement Agreement is fair, adequate and reasonable.

### C.    The Stage of the Proceedings and the Amount of Discovery Completed

The Court should consider the stage of the proceedings and the amount of discovery completed in order to evaluate the degree of case development that Class Counsel have accomplished prior to settlement. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." In re Cendant Corp., 264 F.3d at 235 (quoting In re Gen. Motors, 55 F.3d at 813). "Generally, post-discovery settlements are viewed as more likely to reflect the true value of a claim as discovery allows both sides to gain an appreciation of the potential liability and the likelihood of success." In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) (citing Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1314 (3d Cir. 1993)).

The Court notes that this case has been litigated for over two years and the parties participated in productive, good-faith mediation before Judge Hughes. By that time, Class Counsel had conducted their pre-suit investigation and had briefed their opposition to Defendant's motion to dismiss. During mediation, the parties engaged in informal discovery regarding BMW sales demos. Mediation culminated with a full-day session before Judge Hughes, and the settlement was the result of extensive arm's-length negotiations between experienced counsel. The Court concludes that class counsel had a thorough appreciation of the merits of the case prior to settlement. Accordingly, this factor weighs in favor of approval.

### D.    Risks of Establishing Liability

The risks of establishing liability should be considered to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." In re Cendant Corp., 264 F.3d at 237 (quoting In re Gen. Motors, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, Inc. Sec. Litig., 166 F. Supp. 2d 72, 89 (D.N.J. 2001) (quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 319 (3d Cir. 1998)).

Class Counsel have outlined several risks to establishing liability, as exemplified by BMW NA's motion to dismiss where it contested (1) whether Plaintiff stated a claim under the New Jersey Consumer Fraud Act, for breach of contract, or for unjust enrichment, (2) whether Plaintiff could obtain a declaratory judgment, and (3) whether Plaintiff's complaint could proceed under FED. R. CIV. P. 23. See ECF No. 7. In contrast, the settlement provides immediate and certain recovery for the Class Members. All Class Members who filed a claim form by the deadline will receive a benefit in the form of extended warranty coverage and reimbursement of expenses. See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 317 (3d Cir. 1998) (noting how "settlement provide[s] class members the opportunity to file claims immediately after court approval of the settlement, rather than waiting through what no doubt would be protracted litigation."). In light of the uncertainty of success for both sides in this litigation and the certain, immediate benefit provided by the settlement, the Court concludes that this factor weighs in favor of approval.

### E.    Risks of Establishing Damages

This factor, like the factor before it, "attempts to measure the expected value of litigating the action rather than settling it at the current time." In re Cendant Corp., 264 F.3d at 238 (quoting

17

In re Gen. Motors, 55 F.3d at 816).  Here, it is likely damages would have been aggressively contested through discovery, summary judgment, and trial, invariably leading to a "battle of the experts" before the jury.  This would create tremendous uncertainty as to what damages amount, if any, a jury would award.  See In re Cendant Corp. Litig., 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of the experts,' with each side presenting its figure to the jury and with no guarantee whom the jury would believe").  Accordingly, the Court agrees that significant risks exist in establishing both liability and damages and concludes that this factor weighs strongly in favor of approval.

### F.    Risks of Maintaining Class Action Status Through Trial

The Court also finds that the sixth factor, the risk of maintaining class action status through trial, weighs in favor of approval of the Settlement.  "Because the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial."  In re Warfarin Sodium Antitrust Litig., 391 F.3d at 537 (internal quotation marks and citation omitted).  If the litigation were to continue there is a risk that BMW NA would raise issues concerning class certification and whether individual issues predominate over common issues. (See Def.'s Motion to Dismiss, ECF No. 7).  Thus, because there are significant risks in obtaining and maintaining class certification, this factor weighs in favor of approval.

### G.    The Settling Defendant's Ability to Withstand a Greater Judgment

In Cendant, the Third Circuit interpreted the seventh factor as concerning "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." 264 F.3d at 240.  The Court notes that even if Defendant could afford a greater amount, this fact

18

provides no basis for rejecting an otherwise reasonable settlement. Hegab v. Family Dollar Stores, Inc., No. CIV.A. 11-1206 (CCC), 2015 WL 1021130, at *8 (D.N.J. Mar. 9, 2015). Thus, the Court is satisfied that the settlement is fair, reasonable, and adequate, despite the possibility that Defendant could pay a greater sum. See, e.g., In re Auto. Refinishing Paint Antitrust Litig., 617 F. Supp. 2d at 344 (finding the settlement figure fair, reasonable, and adequate despite defendants' ability to withstand greater judgment, in light of the substantial benefits provided to Class Members); In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 262–63 (D.N.J. 2000), aff'd, In re Cendant Corp., 264 F.3d 201 (approving settlement despite lack of evidence of defendant's ability to withstand greater judgment); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1302–03 (D.N.J. 1995) (concluding the settlement was fair, adequate, and reasonable despite finding defendant could withstand greater judgment).

Class Members will receive substantial benefits from the settlement, including warranty coverage that gives them the full benefit of their original bargain plus an additional three months of warranty coverage. Any ability of Defendant to withstand a greater judgment is outweighed by the risk that Plaintiff would not be able to achieve a greater recovery at trial. In addition, as discussed above, there are significant risks to establishing liability and damages. See Yong Soon Oh v. AT&T Corp., 225 F.R.D. 142, 150–51 (D.N.J. 2004) (finding the difficulties plaintiffs would have in certifying the class and proving damages at trial "diminish[es] the importance of this factor").

In light of these considerations, the Court concludes that this factor weighs in favor of approval.

**H.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The eighth and ninth factors, concerning the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation, weigh in favor of settlement.

> The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved. The percentage recovery, rather must represent a material percentage recovery to plaintiff in light of all the risks considered under <u>Girsh</u>.

<u>In re Cendant Corp. Sec. Litig.</u>, 109 F. Supp. 2d 235, 263 (D.N.J. 2000) (internal quotation marks and citation omitted). Plaintiff argues that, given the size of the Settlement Class, the potential benefits available to class members, and the risks in proving liability and damages and in obtaining class certification, the settlement is, fair, adequate and reasonable. (Pl.'s Br. in Supp. at 29). The Court agrees with the parties and finds that these factors weigh in favor of approval.

## I.     Summary of <u>Girsh</u> Factors

In conclusion, the Court holds that the nine <u>Girsh</u> factors overwhelmingly weigh in favor of approval. The Settlement Agreement was reached after arm's-length negotiations between experienced counsel and after completion of a full day of mediation. Therefore, the Court concludes that the settlement represents a fair, reasonable, and adequate result for the settlement class considering the substantial risks Plaintiff faces and the immediate benefits provided by the settlement. <u>See Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d 241, 255–56 (E.D. Pa. 2011).

## IV.   <u>NOTICE</u>

"In the class action context, the district court obtains personal jurisdiction over the absentee Class Members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." <u>In re Prudential</u>, 148 F.3d at 306 (citation omitted). Under Federal Rule of Civil Procedure

20

23(c), notice must be disseminated by "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B);  See also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 175–76, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (finding that Rule 23(c) includes an "unambiguous requirement" that "individual notice must be provided to those Class Members who are identifiable through reasonable effort").

Additionally, in this case, where a settlement class has been conditionally certified under Rule 23(b)(3) and a proposed settlement conditionally approved, proper notice must meet the requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e). Larson v. Sprint Nextel Corp., No. 07-5325(JLL), 2009 WL 1228443, at *2 (D.N.J. Apr. 30, 2009).  23(c)(2)(B) compliant notice must inform Class Members of:  (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the Class Members' right to retain an attorney; (5) the Class Members' right to exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on Class Members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, 177 F.R.D. 216, 231 (D.N.J. 1997) (citation omitted).

As explained above, KCC—the Settlement Administrator—sent the Court-approved Class Notice to over 99,600 Class Members via e-mail and nearly 5,000 Class Members via First Class mail.   See  Cooper Decl.  at  ¶  8.   KCC  established  a  dedicated  website, www.sainivbmwsettlement.com (https://eclaim.kcclic.net/caclaimforms/bws/home.aspx), which provides the Settlement Notice and other pertinent documents, including the Claim Form and the

Settlement Agreement, "frequently asked questions" with contact information should potential Class Members have additional inquiries, a link to a copy of the Settlement Agreement and Preliminary Approval Order, as well as information on how to submit a Claim form or an objection and how to opt out of the Settlement Agreement. Id. at ¶ 12. Additionally, KCC established a toll-free telephone number that Class Members have been able to use if they have questions about the Settlement or need assistance completing their Claim Forms. Id. at ¶ 15.

The Court finds that the parties complied with the requirements set forth by Rules 23(c)(2)(B) and 23(e). The notice plan was thorough and included all of the essential elements necessary to properly apprise absent settlement Class Members of their rights. The written notice included: (1) direct notice of the Settlement Agreement; (2) full description of their rights and obligations under the Settlement Agreement; and (3) resources to ask questions and, to the extent necessary, receive assistance in submitting Claim Forms. See In re Ikon Office Solutions, Inc., 194 F.R.D. 166, 174 (E.D. Pa. 2000) ("In order to satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection") (internal quotations omitted).

In conclusion, the Court finds that the notice fully complied with the requirements of Rules 23(c)(2)(B) and 23(e).

## V.   ATTORNEY FEES, EXPENSES, AND INCENTIVE AWARDS

Class counsel filed an unopposed motion for an award of attorney fees and expenses in the amount of $600,000. (ECF No. 29). The Court has considered the parties' written submissions and the oral arguments made during the fairness hearing. For the reasons that follow, the Court will grant the requested attorney fees and reimbursement of expenses.

22

## A.      Standard for Judicial Approval of Fees

Fed. R. Civ. P. 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The awarding of fees is within the discretion of the Court, so long as the Court employs the proper legal standards, follows the proper procedures, and makes findings of fact that are not clearly erroneous. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 727 (3d Cir. 2001).

Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons that support its fee determination. Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 359 (E.D. Pa. 2011); In re Rite Aid, 396 F.3d at 301. "In a class action settlement, the court must thoroughly analyze an application for attorneys' fees, even where the parties have consented to the fee award." Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 248 (D.N.J. 2005).

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request — the lodestar approach and the percentage-of-recovery approach." Id. (internal quotation marks and citation omitted). The lodestar method is generally applied in statutory fee shifting cases and "is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Cendant Corp., 243 F.3d at 732 (internal quotation marks and citation omitted). The lodestar is also preferable where "the nature of the settlement evades the precise evaluation needed for the percentage of recovery method." In re Gen. Motors, 55 F.3d at 821; see also In re Rite Aid, 396 F.3d at 300. The percentage-of-recovery method is preferred in common fund cases, as courts have determined "that Class Members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." Varacallo, 226 F.R.D. at 249 (internal quotation marks and

23

citation omitted).   The Court has discretion to decide which method to employ. Charles v. Goodyear Tire & Rubber Co., 976 F. Supp. 321, 324 (D.N.J. 1997).  "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee."  Varacallo, 226 F.R.D. at 249 (internal quotation marks and citation omitted).

Plaintiff argues, and the Court agrees, that the lode-star method is appropriate here because (1) there is no common fund and (2) the nature of the relief provided—providing additional warranty coverage moving forward—evades the precision required to use the percentage of recovery method.

### B.      Lodestar Multiplier Reasonableness

Under the lodestar method, the Court multiplies the hourly rates of the attorneys by the number of hours spent on the matter to get a lodestar amount. See Gunter, 223 F.3d at 190.   The lodestar amount is designed to represent how much revenue the attorneys would have collected had the attorneys billed their client on an hourly basis.  The lodestar multiplier is then obtained by dividing the proposed fee award by the lodestar amount. In re Insurance Brokerage Antitrust Litig., 579 F.3d 241, 280 (3d Cir. 2009); see also Milliron v. T-Mobile USA, Inc., No. 08-4149, 2009 U.S. Dist. LEXIS 101201, at *41 (D.N.J. Sept. 10, 2009).  If the lodestar multiplier is greater than "1" then the proposed fee award is more than the amount the attorneys would have collected through hourly billing.

The first step in calculating the lodestar amount is determining the appropriate hourly rate, based on the attorneys' usual billing rate and the "prevailing market rates" in the relevant community. See In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *54

(citations omitted).   The second step is to assess whether the amount of billable time was reasonably expended. Id.  "Time expended is considered 'reasonable' if the work performed was 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" Id. at *54-55 (quoting Public Interest Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).  The law firm of Finkelstein & Krinsk LLP ("F&K") billed 1,040.2 hours with an average hourly billing rate of approximately $421.73 yielding a lodestar amount of $438,682.50.  See Krinsk Decl., Ex. A.  F&K's total expenses are $21,979.49. Id.  The law firm of Lite DePalma Greenberg, LLC ("Lite DePalma") billed 163.1 hours at an average billing rate of approximately $540.31 yielding a lodestar amount of $88,125.00. See Greenberg Decl., Ex. B.  Lite DePalma's total expenses are $868.73. Id., Ex. C.   The combined lodestar amount for Class Counsel is $526,807.50 as well as $22,848.22 in unreimbursed expenses.[3]  The lodestar multiplier in this case with fees only, obtained by dividing $600,000 by $526,807.50, is approximately 1.13.  The lodestar amount including fees and expenses is approximately 1.09.

First, the hourly billable rates of Class Counsel used to calculate these lodestar values are consistent with the hourly rates approved by this Court in complex class action litigation matters.  See, e.g. In re Merck & Co. Vytorin ERISA Litig., No. 08-CV-285 (DMC), 2010 U.S. Dist. LEXIS 12344, at *45 (D.N.J. Feb. 9, 2010) (approving rates between $250 and $850 per hour); In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121, at *57 (stating that "an overall hourly lodestar non-weighted average ranging from $465.68 to $681.15 is not unreasonable

---

[3] This reported time does not include any of the billable time after January, 2015, and therefore does not account for the work performed by Class Counsel subsequent to that date, or for the future work that will be associated with claims and settlement administration.  (Pl.'s Br in Supp. at 12.)

25

in light of similar rates charged in the market . . . .").  The Court concludes that the average hourly billing rates submitted by Class Counsel are within the normal range for cases of similar complexity and subject matter.

Next, Courts routinely find in complex class action cases that a lodestar multiplier between one and four is fair and reasonable.  See Boone v. City of Phila., 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009).  The Third Circuit recently noted that it has "approved a multiple of 2.99 in a relatively simple case." Milliron, 423 F. App'x at 135 (citing In re Cendant Corp. Prides Litig., 243 F.3d at 742).  See also Henderson, 2013 U.S. Dist. LEXIS 46291, at *48-55 (approving lodestar multiplier of 1.13 for fees and 1.09 for fees and expenses because these multipliers are "within the range found to be to be acceptable by the Third Circuit and this Court" (citations omitted)); In re Schering-Plough Corp. Enhance ERISA Litig., No. 08-1432 (DMC)(JAD), 2012 U.S. Dist. LEXIS 75213, at *22 (D.N.J. May 31, 2012) (stating that a multiplier of 1.6 "is an amount commonly approved by courts of this Circuit"); McCoy v. Health Net, Inc., 569 F. Supp. 2d 448, 479 (D.N.J. 2008) (finding a lodestar multiplier of approximately 2.3 to be reasonable).  Given this general framework, the Court finds that the lodestar multipliers of approximately 1.13 with fees only and 1.09 with fees and expenses is reasonable and appropriate.

## C. Percentage-of-Recovery Method Cross-Check

The Third Circuit has recommended that district courts perform a "cross-check" of a fee award. Reibstein v. Rite Aid, Corp., 761 F. Supp. 2d 241, 260 (E.D. Pa. 2011) (citing In re GMC, 55 F.3d at 821).  After adopting the lodestar method to award attorneys' fees in a class action settlement, a district court should cross-check the proposed fee award using the percentage of recovery method. See Henderson, 2013 U.S. Dist. LEXIS 46291, at *48-55.  The purpose of performing the cross-check is "to insure that plaintiffs' lawyers are not receiving an excessive fee

26

at their clients' expense." Gunter, 223 F.3d at 199.

The Third Circuit has identified a non-exhaustive list of factors that a district court should

consider in its percentage of recovery analysis:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of
> the class to the settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved; (4) the
> complexity and duration of the litigation; (5) the risk of
> nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

In re Rite Aid, 396 F.3d at 301 (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195

n.1 (3d Cir. 2000)). The district court need not apply these Gunter fee award factors in a

formulaic way. Certain factors may be afforded more weight than others. Id. at 301. The

district court should engage in a robust assessment of these factors. Id. at 302; see also Gunter,

223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a

"cursory and conclusory" fashion).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval

of the fee award. Given the similarity and overlap of the Gunter and Girsh factors, the Court

incorporates by reference the reasons given for approval of the Settlement Agreement. The Court

will now discuss additional reasons that support approval of attorney fees in this matter.

### 1. The Size of the Fund Created and the Number of Persons Benefitted

The Court notes that the present Settlement Agreement does not create a class fund, and

therefore only an approximation of the total compensation that will be provided to Class Members

can be calculated. However, it appears that the Settlement Agreement in this case provides

substantial relief to the Class Members. As discussed above, there are in excess of 104,000 Class

Vehicles and settlement notice has been sent to in excess of 99,600 unique e-mail addresses and

more than 4,800 postal addresses via first class mail. According to Plaintiff's damages expert, the retail price of three months of comparable aftermarket extended warranty coverage is between $263.43 and 316.80 per vehicle. (See Declaration of Matthew E. Pohl ("Pohl Decl."), ¶ 10). When multiplied by the number of eligible class vehicles, the aggregate value to the Class Members of extended warranty coverage alone is between $12.2 and 12.8 million, and this excludes reimbursement of out of pocket expenses for any Class Members that were denied warranty coverage. Id. at ¶ 22. Given the minimum possible total settlement value, as well as the number of Class Members entitled to benefits and the gross amount per person, this factor weighs in favor of approval. See Boeing Co. v. Van Gemert, 444 U.S. 472, 480 (1980) (the right of class members "to share the harvest of the lawsuit upon proof of their identity . . . is a benefit in the fund created by the efforts of the class representative and their counsel").

### 2.    Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The lack of objections by settlement Class Members to the fees requested by class counsel strongly supports approval. As noted above, notice was sent directly to over 104,000 potential Class Members and only thirteen (13) potential Class Members have opted out of the Settlement Agreement. Additionally, there was only one objection to the Settlement Agreement, and as discussed in detail above, none of the issues raised by Mr. Barondes were related to the present Motion for Attorneys' Fees and Expenses. See Varacallo v. Mass. Mutual Life Ins. Co., 226 F.R.D. 207, 237–38 (D.N.J. 2005) (finding exclusion and objection requests of .06% and .003%, respectively, "extremely low" and indicative of class approval of the settlement). As such, this factor weighs in favor of approval. See In re Lucent Techs., Inc., Sec. Litig., 327 F. Supp. 2d 426, 435 (D.N.J. 2004) (finding that this factor weighed in favor of approval where only nine of nearly

three million potential Class Members objected to the fee application).

### 3.  Skill and Efficiency of Attorneys

As discussed in the section on class certification, class counsel are experienced in litigating and settling consumer class actions. Class counsel obtained substantial benefits for the Class Members—despite vigorous defense by Defendant's counsel—a consideration that further evidences class counsels' competence. Thus, this factor also weighs in favor of approval of the fee award.

### 4.  The Complexity and Duration of the Litigation

As explained in the discussion of the Girsh factors, this case has been litigated for over two years and involves uncertain legal issues. The parties reached the Settlement Agreement after intense mediation and arm's-length settlement negotiations. Thus, this factor weighs in favor of approval.

### 5.  The Risk of Non-Payment

Class counsel undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. (Pl.'s Br. in Supp. at 1.) Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees. See In re Prudential-Bache Energy Income P'ships Sec. Litig., 1994 U.S. Dist. LEXIS 6621, at *16 (E.D. La. May 18, 1994) ("Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). This Court observed that "Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." 282 F.R.D. 92, 122 (D.N.J. 2012) (citations omitted). Class counsel invested substantial effort and resources to obtain this favorable settlement. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Litigation

Class counsel reports over 1,200 hours of contingent work on this case for the past three years. (Pl.'s Br. in Supp. at 20.) Based on the amount of time expended on this matter, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorney fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. See, e.g., In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, *42–46 (D.N.J. Nov. 9, 2005).

A review of similar cases demonstrates that the fee request presently before the court is reasonable. See, e.g., Henderson, 2013 U.S. Dist. LEXIS 46291, at *40-58 (finding $3,000,000 in attorneys' fees was fair and reasonable where class action settlement provided warranty extensions and reimbursements to Class Members in connection with alleged defects in automobiles' transmission systems); McGee v. Cont'l tire N. Am., No. 06-6234 (GEB), 2009 U.S. Dist. LEXIS 17199 (D.N.J. Mar. 4, 2009) (concluding $2,274,983.70 in fees and expenses representing a lodestar multiplier of 2.6 was appropriate in a consumer class action); O'Keefe v. Mercedes-Benz USA, LLC, 214 F.R.D. at 304 (stating $4,896,783.00 in fees was justified in class action involving allegedly defectively designed rear lift-gate latch). Thus, courts routinely grant similar awards of attorneys' fees and expenses in similar cases.

The second part of this analysis addresses whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace. "The percentage-of-the-fund method of

awarding attorneys' fees in class actions should approximate the fee [that] would be negotiated if the lawyer were offering his or her services in the private marketplace." In re Remeron Direct Purchaser Antitrust Litig., 2005 U.S. Dist. LEXIS 27013, *44–45. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arm's-length negotiation, had one been feasible." In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); see also In re Synthroid Mktg. Litig., 264 F.3d 712, 718 (7th Cir. 2001) ("[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."). To determine the market price for an attorney's services, the Court should look to evidence of negotiated fee arrangements in comparable litigation. In re Cont'l Ill. Sec. Litig., 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining evidence about the terms of retention in similar suits, suits that only differ because, since they are not class actions, the market fixes the terms"). As explained more fully above, class counsel used standard hourly rates to calculate the lodestar amount. (See Krinsk Decl., Ex. A; Greenberg Decl., Ex. B) These hourly billable rates are consistent with hourly rates routinely approved by this Court in complex class action litigation. See In re Merck & Co., 2010 U.S. Dist. LEXIS 12344 at *45; McGee, 2009 U.S. Dist. LEXIS 17199 at *50.

In sum, for all the reasons stated above, the Court concludes that the requested fee by class counsel is fair and reasonable under the lodestar method. The Court will approve class counsel's application for attorney fees of $600,000.

### D.   Expenses

Class Counsel also seek reimbursement of $22,848.22 in litigation expenses to be paid from the $600,000 attorney fee and expense award. (Pl.'s Br. in Supp. at 7.) "Counsel for a class

action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." In re Safety Components Int'l, Inc., 166 F. Supp. 2d at 108 (citing Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995)). Class counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including costs associated with travel, expert and consultant fees, and mediation. (See Krinsk Decl., Ex. A)   The Court finds that the expenses were adequately documented and reasonably and appropriately incurred in the litigation of the case.  See In re Datatec Sys. Sec. Litig., 2007 U.S. Dist. LEXIS 87428, at *27 (D.N.J. Nov. 28, 2007).

  E. **Summary of Attorney Fees and Expenses Award Analysis**

   For the foregoing reasons, the Court grants the application of class counsel for an award of attorneys' fees and reimbursement of expenses.

**VI.** **CONCLUSION**

   Because the named Plaintiff has satisfied all of the requirements of Fed. R. Civ. P. 23, this Court certifies the class for purposes of this Settlement and approves the Settlement Agreement. The Court also grants the application of Class Counsel for attorney fees and reimbursement of expenses.  An appropriate Order accompanies this Opinion.

Date: May 21, 2015

               **HON. CLAIRE C. CECCHI**
               **United States District Judge**